IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BETTY L. DAVIS, on behalf of the UNITED STATES OF AMERICA, | ) ) | |
| Plaintiffs, | ) ) | C. A. No. 10-cv-001156 ELECTONICALLY FILED |
| v. | ) | |
| POINT PARK UNIVERSITY, SANDRA CRONIN, AND BRIDGIT MANCOSH, Defendants | ) ) ) | |

# **MEMORANDUM ORDER RE: DEFENDANTS' MOTION TO DISMISS (Doc. No. 34)**

Presently before this Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint.[1] Doc. No. 27. The Court has reviewed Plaintiff's Amended Complaint (Doc. No. 27), Defendants' Motion to Dismiss (Doc. No. 34) and in Brief in Support Thereof (Doc. No. 35), and Plaintiff's Response and Brief in Opposition Thereto (Doc. Nos. 37 and 38). For the reasons that follow, Defendants' Motion to Dismiss will be DENIED.

Under Federal Rule of Civil Procedure 8(a)(2), civil complaints must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.544, 570 (2007)).[2] To survive a motion to dismiss under Rule 12(b)(6), a claim for relief now "'requires more than labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action.'"

---

[1] The Court has subject-matter jurisdiction over this matter pursuant to 31 U.S.C. § 3732(a), under the False Claims Act and, pursuant to 28 U.S.C. § 1331 (federal question).

[2] In *Twombly*, the United States Supreme Court abrogated its decision in *Conley v. Gibson*, 355 U.S. 41 (1957), which allowed dismissal of a claim only if "no set of facts" could be conceived to support it. *Conley*, 355 U.S. at 45.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) (quoting *Twombly*, 550 U.S. at 555). While Rule 8 was "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950.[3]

In light of the Supreme Court's decision in *Iqbal*, the United States Court of Appeals for the Third Circuit has advised district courts to review Rule 12(b)(6) motions to dismiss for failure to state a claim as follows:

> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

In conducting this analysis, the Court will accept all of the plaintiff's factual allegations as true and construe all inferences in the light most favorable to the non-moving party. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)). However, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.

---

[3] Rule 9(b), which is applicable to certain claims under the False Claims Act (FCA), imposes a heightened pleading standard, and requires that in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. However, malice, intent, knowledge, and other conditions of the mind may be plead generally.

*See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). A court is not required to consider legal conclusions; rather, it should determine whether the plaintiff should be permitted to offer evidence in support of the allegations. *See Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000). To satisfy the requirement of Federal Rule 8(a)(2) for a "short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must aver sufficient factual allegations which "nudge" its claims "across the line from conceivable to plausible." *Iqbal*, 129 S.Ct. at 1951.

This standard does not impose a heightened burden on the claimant above that already required by Rule 8, however, but instead calls for fair notice of the factual basis of a claim and enough specificity to raise a reasonable expectation that discovery will reveal evidence of the necessary element. *See Twombly*, 550 U.S. at 555; *Phillips*, 515 F.3d at 234.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, at this stage, the Court accepts all of the factual allegations in the Complaint as true and all reasonable inferences are drawn in Plaintiff's favor. *See Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009). Therefore, the facts of the case are as follows:

Defendants, Point Park University (PPU) is a higher education institution that receives government funding. Sandra Cronin (hereinafter "Defendant-Cronin") is the Director of Financial Aid at PPU, and Bridget Mancosh (Hereinafter "Defendant-Mancosh") is the Senior Vice President of Finance and Operations for Defendant-PPU. *Id.* at ¶¶4, 18, 19.

Plaintiff worked as the Defendant's Senior Director of Student Financial Services from November 10, 2008 until July 2, 2010. Doc. No. 27 at ¶ 3. Her duties included the day-to-day management, coordination and supervision of Financial Aid and Student Account Directors. *Id.*

¶ 31. Plaintiff alleges that defendants submitted false certifications and claims to the United States in order to obtain, wrongly, Federal Supplemental Educational Opportunity Grant (FSEOG) funds. *Id.* at ¶ 5. Plaintiffs claim that defendants made multiple false certifications and claims on their Annual Program Participation Agreements (PPA), Fiscal Operations Reports and Applications to Participate (FISAP), and SF-SAC Forms (Audits of States, Local Government and Non Profit organizations) (SAC). *Id.* at ¶ 6.

According to plaintiff's amended complaint, defendant PPU's annual funding is conditioned upon its annual certifications provided to the U.S. Department of Education (DOE). *Id.* at ¶ 7. Plaintiff alleges that defendants made false statements or claims on these certifications and knowingly did so to receive FSEOG funding that it was not entitled to receive. *Id.* at ¶¶ 8, 9.

The amended complaint avers that after Defendant PPU files the certifications, PPAs, FISAPs, and SACs, a request is made directly to the Secretary of the DOE and the funds are transferred directly from the DOE to defendant PPU. *Id.* at ¶ 10. Plaintiff alleges that defendants knowingly did not comply with government regulations concerning the disbursement of the governmental funds during the entirety of the process, before and after certification, request, and receipt of the funds. *Id.* at ¶ 12. Due to the Defendant's disbursement practices, plaintiff alleges that, since 2000, many eligible students were excluded from receiving any of the funds and instead the majority of the funds were awarded to ineligible students. *Id.* at ¶ 13. Plaintiff claims that defendants wrongfully awarded over $2 million dollars of funds to ineligible students, thus violating federal regulations. *Id.* at ¶ 14.

Plaintiff claims that she made the discoveries of the false claims during her employment and brought the information, that Defendant-Cronin had developed and implemented fraudulent

practices, to the appropriate party in the chain of command (Defendant-Mancosh). *Id.* ¶¶ at 31-33. Plaintiff alleges that Defendant-Mancosh told her that PPU was making no violations and that no violations were revealed on annual A-133 audits. *Id.* at ¶ 34. The A-133 audits are needed to qualify for the government funding and are performed by certified public accounting firms on behalf of the DOE. *Id.* at ¶ 35.

Plaintiff alleges that, since 2000, Defendants concealed PPU's illegal funding practices from the annual A-133 audit. *Id.* at ¶ 36. After Plaintiff made repeated reports, she claims that Defendant-Mancosh told her to "keep quiet." *Id.* at ¶ 37. PPU hired Financial Aid Service, Inc. (FAS), in May of 2010, to perform an in house audit and Plaintiff alleges that she informed them of her suspicions and that FAS auditors concurred that PPU was awarding and disbursing the funds in violation to the federal regulations. *Id.* ¶¶ at 38, 39. After FAS reported their findings, PPU allegedly terminated the Plaintiff without cause. *Id.* ¶ at 40. Plaintiff claims that she was terminated days before the annual A-133 audit because PPU did not want to risk her disclosing the illegal dealings as she would have been obligated to do so. *Id.* ¶¶ at 41-43. The FAS report was then never submitted during that annual A-133 audit. *Id.* at ¶ 44.[4]

In order to receive the funding, PPU must enter into a PPA with the Secretary of the DOE and the PPA must comply with all applicable regulations. *Id.* ¶¶ at 45, 46. Plaintiff alleges that since 2000 the Defendants knowingly violated the regulations concerning disbursement of the governmental funds and that between the years of 2004 and 2010 that the defendants' PPAs were falsified to improperly obtain funding. *Id.* ¶¶ at 47, 48. Plaintiff claims that the falsified documents, which Defendant-Mancosh and Defendant-Cronin were aware of, resulted in the

---

[4] Plaintiff has also brought claims for retaliation and a supplemental state law claim under the Pennsylvania Whistleblower law, and those claims are set forth in companion civil action 10-cv-1157.

defendants' violating federal regulations and awarding the majority of the governmental funds to ineligible students. *Id.* ¶¶ at 49, 50.

In addition to the PPAs, Defendants also need to file annual FISAPs to receive the FSEOG funds. *Id.* ¶ at 51. Plaintiff alleges that Defendants filed the annual FISAPs knowing they were violating federal regulations in the disbursement of the FSEOG funds since 2000. *Id.* ¶ at 53. Plaintiff claims that during the years of 2004 through 2010, Defendants' FISAPS contained false certifications to obtain FSEOG funds that they were not entitled to receive. *Id.* Plaintiff alleges that defendants misrepresented the number of eligible students in their annual FISAP to obtain the funds. *Id.* ¶ at 54. The violations were known by Defendant-Cronin and Defendant-Mancosh and this continued scheme to defraud led to the majority of funds being distributed to ineligible students according to the plaintiff's allegations. *Id.* ¶¶ at 56, 57.

Also, Defendants were subject to an A-133 audit annually to receive the FSEOG. *Id.* ¶ at 58. Plaintiff claims that since 2000 Defendants filed the annual SACs in knowing violation of the government regulations as filing the SACs was to certify compliance with the disbursement of FSEOG funds. *Id.* ¶¶ at 59, 60. Plaintiff alleges that during the years of 2004 through 2010, Defendants filed false claims to improperly obtain FSEOG funds and then distributed them in violation of the federal regulations. *Id.* ¶¶ at 60-63.

Plaintiff alleges that by providing and filing these false documents, defendants are in violation of the federal regulations in the receipt and disbursement of FSEOG funds.

Viewed in light of the foregoing pleading standards (also under Fed. R. Civ. Pr. 9(b)), this Court finds that at this stage of the proceedings, the facts alleged in the amended complaint are sufficient to show that Plaintiff has a "plausible claim" for relief. Simply put, Plaintiff has properly pled the required legal elements of her claims, and she has averred sufficient factual

allegations which "nudge" her claims "across the line from conceivable to plausible." *Iqbal*, 129 S.Ct. at 1951. First, Plaintiff has properly alleged that defendants presented or caused to be present a claim for payment to the United States – that is defendant requested and received FSEOG funds from the United States. Doc. No. 27 at ¶ 4. Second, Plaintiff has properly alleged that the claim was false or fraudulent in that defendants falsely certified in PPU's, PPA's, FISAPs and SACs, compliance with FSEOG regulations to obtain FSEOG funds. Doc. No. 27 at ¶ 6, 12. Third, Plaintiff has properly plead that defendants knew the claim was false or fraudulent in that they knew these certifications were false and had been doing so for over 10 years, and she alleges sufficient factual matter to support her position that Defendants were hiding their violations. Doc. No. 27 at ¶ 67-86. 31 U.S.C. §§ 3729, et seq.

Accordingly, for these reasons, **IT IS HEREBY ORDERED** that Defendants' motion to dismiss (doc. no. 34) the amended complaint **IS DENIED** without prejudice to Defendants raising the issues set forth therein in a motion for summary judgment at the appropriate time following discovery.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

Cc:  All ECF-registered counsel of record