IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BETTY L. DAVIS, on behalf of the UNITED STATES OF AMERICA, <br>            Plaintiffs, <br><br>     v. <br><br>POINT PARK UNIVERSITY, SANDRA CRONIN, AND BRIDGIT MANCOSH, <br>            Defendants | ) <br> ) <br> )    C. A. No. 10-cv-001156/1157 <br> )    ELECTRONICALLY FILED <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 55)

**I.   Introduction**

Presently before this Court is Defendants' Motion for Summary Judgment seeking dismissal of both Amended Complaints at civil action nos. 10-1156 and 10-1157.[1] Doc. No. 27. Defendants seeks summary judgment on Plaintiff's three claims under the False Claims Act ("FCA"), as well as her claims for retaliation under the FCA, and under the Pennsylvania Whistleblower Law ("PWL"), 43 P.S. § 1423(a). After carefully reviewing and considering the positions of the parties as set forth in their thorough briefing and voluminious accompanying material, this Court will DENY Defendants' Motion for Summary Judgment.

**II.   Standard of Review**

Summary judgment is only proper when there is no genuine issue of material fact in the case and the moving party is entitled to judgment as a matter of law. *Reedy v. Evanson*, 615 F.3d 197, 2010 (3d Cir. 2010), *citing* Fed. R. Civ. P. 56(c)(2). This Court, in deciding summary judgment, may not "weigh the evidence or to determine the truth of the matter, but only to

---

[1] The Court has subject-matter jurisdiction over this matter pursuant to 31 U.S.C. § 3732(a), under the False Claims Act and, pursuant to 28 U.S.C. § 1331 (federal question).

1

determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* citing *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir.2009). If so, summary judgment can not be granted.  The Court must view the facts in the light most favorable to the non-moving party, who is "entitled to every reasonable inference that can be drawn from the record." *Id.* citing *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir.2000). "[W]hen there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties*." Peterson v. Lehigh Valley Dist. Council,* 676 F.2d 81, 84 (3d Cir.1982).

### III.     Discussion

It is on this standard that this Court has reviewed Defendants' motion, Plaintiff's response, Defendants' reply, and Plaintiff's Sur-Reply thereto.  Based on the pleadings and evidence of record, and the briefs filed in support and opposition thereto, this Court concludes, as a matter of law, that genuine disputes remain as to material facts which precludes summary judgment in this matter.

The FCA establishes liability for anyone who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(1),(2)(1994). The *qui tam* provision, 31 U.S.C. § 3730(b)(1)(1998), allows an individual to sue, on behalf of the government, a person who the relator knows to have violated Section 3729. The remedial provisions of the FCA permit recoveries of three times the amount of damages sustained by the government plus penalties of $5,500 to $11,000 per claim. Under the

*qui tam* provision, the relator can recover a portion of the damages to which the government is entitled. 31 U.S.C. § 3730(d).

In order to set forth a valid claim for FCA liability, Plaintiff must demonstrate that Defendants knowingly (either with actual knowledge, *with deliberate ignorance*, or *with reckless disregard* for the truth or the falsity of the information), submitted a false or fraudulent claim for payment by the government.  *U.S. ex rel. Watson v. Connecticut General Life Ins. Co.,* 2003 WL 303142 *(E.D. Pa. 2003).*   Innocent mistakes or negligence are not actionable under this section. *Hefner v. Hackensak University Medical Center.*, 2005 WL 3542471 (D. N.J. 2005).

At the outset, Defendants reiterate the same argument as in their motion to dismiss, that Plaintiff has not sufficiently pled a cause of action under either the express or implied false certification theory under the FCA because the compliance with the regulations at issue is not a condition of payment for the receipt of Federal Supplemental Educational Opportunity Grant Funds (FSEOG), and again cites *U.S. ex rel. Wilkins*, __ F.3d __, 2011 WL 2573380 at *9 (3d Cir. June 30, 2011). In *Wilkins*, the United States Court of Appeals for the Third Circuit stated that in FCA cases,

> [t]o state a claim under [the implied false certification] theory it is necessary to allege not only a receipt of federal funds and a failure to comply with applicable regulations, but also that the payment of the federal funds was in some way conditioned on compliance with those regulations.  Thus, under this theory a plaintiff must show that *if the Government had been aware of the defendant's violations of the [applicable] laws and regulations that are the bases of a plaintiff's FCA claims, it would not have paid the defendant's claims*.

*U.S. ex rel. Wilkins*, __ F.3d __, 2011 WL 2573380 at *9 (3d Cir. June 30, 2011)(emphasis added).  Here, Defendants assert that Plaintiff's claim, "fails because PPU's compliance with § 676.10 or 676.19 is not a condition of payment."  Doc. No. 56, at 4.

This Court previously held that Plaintiff has sufficiently plead a cause of action under the implied false certification theory of liability under the FCA, and the cases cited by Defendants, including *Wilkins,* deal primarily with the motion to dismiss phase of the case, and what allegations are required in order to survive a motion to dismiss.  Doc. Nos. 41-42. The Court will decline Defendants' request for the Court to reconsider its ruling that Plaintiff has adequately pled a cause of action under the implied false certification theory under the FCA.

To reiterate, in order to set forth a valid claim for FCA liability, Plaintiff must demonstrate that Defendants submitted a claim with knowledge of the falsity of the claim. *U.S. ex rel. Watson*, 2003 WL 303142 at *14.  The knowledge element may be established through recklessness and/or deliberate ignorance. *Id*.

Defendants argue that there is no evidence to show that Defendants knew or showed reckless disregard for § 676.10 or any other legal requirement in PPU's FSEOG awarding practices.  The Court finds that has Plaintiff set forth ample facts that could demonstrate that PPU improperly denied financial aid to needy part-time/non-resident students, and that once Davis reported to Mancosh, the Senior Vice President of Finance and Operations, that PPU was violating federal regulations in this manner, that Mancosh rejected Davis' discovery without asking Cronin, the Director of Financial Aid, the basis for PPU's policy, reading the statute, calling the United States Department of Education ("DOE"), consulting with PPU's auditors, or consulting with any outside authority.   These facts are sufficient such that a reasonable fact finder could conclude that all Defendants either knew, were deliberately indifferent to, or at a minimum showed reckless disregard for compliance with § 676.10.

Plaintiff has further submitted evidence demonstrating material issues of fact that Mancosh discouraged Davis' investigation, and that she told her to "keep quiet" and not let any

4

other school know about her accusations. Plaintiff has presented facts that when she persisted with her investigation and accusations, Mancosh terminated Plaintiff from her employment on two days notice, and without cause (Defendants' alleged reason was due to "restructuring" or "position elimination").

According to Plaintiff's version of the facts, which the Court must view in the light most favorable to her, Mancosh did not tell auditors at Deloitte and Touche ("DT") about Plaintiff's charge that it was wrongly awarding FSEOG's (even two days after Plaintiff's charge, and after sending an email to the "Ask Regs" department at DOE), until after this lawsuit was filed.

Plaintiff claims that Mancosh contacted DOE's call center regarding Plaintiff's charge and made certain alleged misrepresentations to the DOE's call center. Plaintiff also contends that Cronin actions of withholding documents detailing the exclusion of part-time, commuter students, and withholding information from DT on eligible students excluded from receipt of FSEOG (and her supervisors assent thereto) evidence knowledge or reckless disregard.

Defendants counter that Davis and Mancosh/Cronin merely had a difference of opinion or "interpretation" of federal regulations. They claim that if that Mancosh and Cronin, both individually and on behalf of PPU, violated the regulation, it was a "reasonable interpretation of an ambiguous regulation." Doc. No. 56 at 16. While Defendants argue that the DOE audit of PPU bolstered their argument, Davis counters that the audit actually took place in 2000, but it covered policies in place from 1997-1998, which are not the policies at issue here, because the exclusion of commuters occurred after 2000. Essentially, Defendants argue that their actions and policies were "reasonable" (not deliberate or even negligent).

Plaintiff argues that numerous sources have advised Defendants (both individually and on behalf of PPU) that their actions of excluding certain classes of students from the FSEOG was

5

improper (and not "reasonable" or "matter of interpretation."), including Davis herself, the National Association of Student Financial Aid Administrators ("NASFAA"); Financial Aid Services, Inc. ("FAS"); PPU's new Financial Aid Director ("FAD"), John Poznick; and the DOE "Ask Regs." Furthermore, Cronin testified that her supervisors authorized the FSEOG of non-resident students over the period of the exclusion policy and her former supervisors included PPU's current President, PPU's current Dean of Students.

It is not for this Court to weigh the evidence as set forth by parties dueling versions of the facts, but rather to judge these facts in the light most favorable to the non-moving party, and to determine whether the evidence creates a genuine issue of material fact such that a reasonable fact finder might find FCA liability. This Court concludes that Plaintiff's claims for FCA liability against all Defendants may proceed to a jury.

Furthermore, with regard to Plaintiff's claim of retaliation under the FCA, Defendants argue that Plaintiff has failed to present any evidence to support her retaliation claim. In order to establish a claim for retaliation under the FCA, Plaintiff must demonstrate that: (1) [she] engaged in 'protected conduct,' (i.e. acts done in furtherance of an action under 31 U.S.C. § 3730(h)), and (2) that [she] was discriminated against because of her protected conduct. *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 186 (3d Cir. 2001)(citations omitted). Specifically, Defendants contend that there is no evidence that Plaintiff engaged in "protected activity," as that phrase has been defined by the United States Court of Appeals for the Third Circuit. *Hutchins,* 253 F.3d at 187.

Defendants argue that the Plaintiff was merely acting in conformance with the duties of her job when she discovered Defendants' alleged "improper" activities and thus was not engaged in 'protected conduct.' However, Plaintiff has presented facts from which a reasonable jury

6

could conclude that her investigation was outside the scope of her job duties, and that Defendants were on notice of Plaintiff's intent to report PPU's alleged violation. Specifically, that Plaintiff reported to Mancosh, the Senior Vice President of Finance and Operations, that PPU was violating federal regulations, and Mancosh rejected Davis' charge. Plaintiff has also presented facts that she intended to press the issue by securing a confirmation from the NASFAA (without Mancosh's direction), added the issue to the FAS audit, raised the issue with the Pittsburgh Counsel of Higher Education (Mancosh allegedly told Plaintiff to "keep quiet."), and instructed Cronin to change the FSEOG (including in the Financial Aid Calculator for 2011-2012).

Furthermore, Plaintiff's claim for retaliation (pretext) is supported by her factual allegation that despite favorable performance reviews, she was terminated with only two days notice, (albeit allegedly due to "position elimination") at a cost to PPU of $100,000.00, and conditioned upon a general release and confidentiality clause (although PPU claims that is the norm in approximately 50% of the terminations). These are genuine issues of material fact in dispute which are best resolved by a jury.

Finally, Plaintiff's claim for retaliation under the Pennsylvania Whistleblower Law also withstands summary judgment for the same reasons set forth hereinabove. Plaintiff has set forth adequate evidence from which a jury could reasonably conclude a causal connection between the report of wrongdoing by Defendants and the alleged retaliatory acts (her swift termination). *See O'Rourke v. Commonwealth*, 778 A.2d 1194, 1200-04 (Pa. 2001).

Accordingly, for these reasons, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (doc. no. 55) **IS DENIED**.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

Cc:   All ECF-registered counsel of record